# Myrick v. Williamson, *et al.*

*Bill to Cancel Deeds.*

(Decided November 19, 1914.  67 South. 273.)

1. *Wills; Construction.*—The whole will and the surroundings of the testator and the objects of his bounty are to be considered in ascertaining the intent of the testator.

2. *Same; Authority to Control.*—A will giving the testator's wife authority to take full control of testator's property merely gives full management, but does not give a beneficial interest in the estate.

[Myrick v. Williamson, et al.]

3. *Same; Gift by Implication.*—The implication from a will which will raise a gift must be a necessary implication; if in the ordinary sense, the words make a valid will, there is no room for implication.

4. *Same; Interest Given; Trust Estates.*—No beneficial interest is given testator's wife under a will authorizing her to take full control of all his property, to collect all claims, and to sell or buy property, with full power to make title, and relieving her from giving bond or making settlement with any court, and directing that his grandson be given a good education, and authorizing her to pay for same out of the estate, and directing that at her death certain legacies be paid, and the remainder of the estate be distributed in certain proportions to certain persons, and that an administrator be then appointed to carry out said provisions; the interest created being merely an executorial one, or that of a trustee.

5. *Trusts; Power to Sell; Gift.*—The power given by a will to a testator's wife made trustee to sell the property, does not authorize her to give it away.

6. *Same; Sales; Bill to Avoid; Parties.*—Persons to whom, by a provision of a will, shares of the estate are to be distributed, on the death of a testator's wife, who, under the will, is a trustee, may maintain an action to set aside a deed made by her as in violation of the trust.

7. *Same.*—The testator's wife, who is given power as executrix and trustee, is a necessary party to a bill by persons to whom, on her death, shares of the estate are to be distributed, in a suit to set aside a deed made by the wife as in violation of her trust under the will.

APPEAL from Monroe Law and Equity Court.

Heard before Hon. W. G. McCorvey.

Bill by Susan Williamson and others against L. Bernard Myrick. Decree for complainants on demurrer, and respondent appeals. Reversed and remanded.

The following is the will referred to in the opinion:

"In the name of God—Amen:

I, Thomas P. Buffington of Monroe county and state of Alabama, being of sound and disposing mind and memory, do make and publish and declare this my last will and testament, hereby revoking all former wills made by me.

"And first, I desire to acknowledge with gratitude my obligations to Almighty God for His constant blessings upon my life and labors; attributing whatever success I have had to His kind Providential care.

"Second. It is my will and desire that my wife, Martha E. Buffington, shall pay all my debts, if I leave any, as soon after my death as practicable.

"Third. I hereby authorize my beloved wife, Martha E. Buffington, to collect all claims which I may leave outstanding at my death, to take full control of all my property, real and personal and mixed, in her own name, to sell or buy property with full power to make title just as I would if living.

"Fourth. In taking possession of my estate I direct that my wife shall not be required to give bond or make any settlement or return to the probate court or to other courts.

"Fifth. I hereby will and direct that my grandson, Bernard Myrick, shall have a right good education, and authorize my wife to pay for same out of my estate.

"Sixth. At the death of my wife, or if she should die first, at my death, I will and direct that my grandson, Bernard Myrick shall have five hundred dollars, and my granddaughter, Mattie Mims, shall have two hundred dollars; and then I desire that the remainder of my estate be divided into four equal parts and one part given to my daughter Susan Williamson and one part given to my granddaughter, Mattie Mims, and one part given to my grandson, Bernard Myrick, and the other and last part to be equally divided between the seven other grandchildren, the children of my daughter, Mary L. Myrick.

"Seventh. At my wife's death, or if she should die first, at my death, I desire that my administrator shall be appointed according to the regular forms of law, and that he be placed under proper and sufficient bond and that he execute and carry out the aforesaid provisions of this my last will. Given under my hand and

seal this the 17th day of May A. D. 1902.

"T. P. Buffington.    (Seal.)

"Witness:

"J. B. Coleman.

"W. D. Feagin."

J. D. RATCLIFFE, for appellant.

F. W. HARE, for appellee.

GARDNER, J.—Appellees (complainants in the court below), legatees under the will of T. P. Buffington, deceased, filed this bill for the purpose of cancellation of two certain deeds executed by Martha E. Buffington, widow of said T. P. Buffington, to appellant, L. Bernard Myrick, bearing date July 3, 1914, copies of which constitute Exhibits C and D to the bill; or, in the event it should be held said deeds conveyed a life estate to the grantee, that they be so limited by decree of the court. This is the sole purpose of this suit, and the grantee, L. Bernard Myrick, is sole respondent.

Demurrer to the bill being overruled, this appeal is brought, and the question of first importance relates to the construction of the will of said T. P. Buffington. This will the reporter will set out in the report of the case.

It is insisted by counsel for appellant that by the will Martha E. Buffington, the widow, was given the absolute fee to the entire estate, or, failing in that contention, that she was given by the will a life estate unaccompanied by any trust, with absolute power of disposition, and that therefore the effect was to give her the fee-simple title.

(1) "It is a legal truism that the cardinal rule—the one above all other rules—for the construction of a will

is to ascertain the intention of the testator and give it effect. * * * When the judicial mind is brought to its construction, the effort is to ascertain from the language employed, the surroundings of the testator, and the objects of his bounty, what his intentions were in the disposition he has made of his property, * * * and give effect to that intention, if it is not inconsistent with the law."—*Wolffe v. Loeb,* 98 Ala. 426, 13 South. 744.

"This intent must be gathered * * * from the language used in the will, and by this is meant that such intention shall be gathered from the four corners of the instrument; that is to say, from the whole will, the whole frame of the will, the whole scheme of the testator manifested by the will, taking into consideration, and giving due weight to every word used in the will."—*Ball v. Phelan,* 94 Miss. 293, 49 South. 956.

(2) It must needs be conceded that the will contains no apt words of devise or bequest to the wife, Martha E. Buffington. If, therefore, the will is to be construed as effectuating a gift of the estate to the wife, it must be by necessary implication.

The rule with respect to estates by implication was clearly stated by this court in *Wolffe v. Loeb, supra.* It was there said: "All estates by implication are founded on the intent of the testator, or ascertained from the words of the will, and, where implications are allowed, they must be necessary in order to effectuate this intention. A construction in favor of a devise or bequest by implication should be so strong, as that a contrary intention to that imported cannot be supposed to have existed in the mind of the testator."

The implication, as we have said in *Sherrod v. Sherrod,* 38 Ala. 543, must not rest on conjecture; it must be necessary, and so plain as to be irresistible to the

mind. "If the words of the will, as written, construed in their ordinary sense, will make a valid will, then there can be no room for implication."

The case of *Ball v. Phelan*, 94 Miss. 293, 49 South. 956, reviews many authorities concerning this rule, and is of much interest in this connection.

(3) Counsel for appellant, in his brief, leans heavily upon the language of the third paragraph of the will. Nothing is there devised to the wife. There is no gift or language subject to such construction when the entire will is looked to. The wife is "authorized to collect all claims," and "to take full control" of his property. In this respect the language bears much similarity to that of the will construed in *Wolffe v. Loeb*, *supra*, where the words, "I make my wife sole controller just the same as if I was alive," were construed as meaning to give full management and authority over the estate, but gave no beneficial interest therein. As said in that case: " 'Control' means to check, restrain, govern, have under command, and authority over."

And the opinion proceeds with the following language applicable to the instant case: "The testator, we must presume, understood the meaning of the words 'give, grant, devise or bestow,' as well as he did that of 'control,' and if he had desired to devise or bequeath his wife anything, he would have employed some apt word to effect that intent."

(4) In the fourth paragraph the testator directs that "in taking possession" of his estate his wife be exempt from bond and from making any settlement in any court. The bill shows that testator and his wife had but two children, complainant Susan Williamson and Mrs. Myrick, the mother of respondent, L. Bernard Myrick, who died at his birth, whereupon respondent was taken to the home of the testator and raised by him

and his wife. The respondent was about the age of ten years when the will was written, in May, 1902. It was but natural, therefore, that the welfare of respondent, then a boy, nurtured and cared for since his birth under the roof of testator, should be considered in the execution of his will, and, in response to this natural affection and concern for the future of the boy, that the testator, in paragraph fifth of the will, should say: "I hereby will and direct that my grandson, Bernard Myrick, shall have a right good education, and authorize my wife to pay for same out of my estate." It was equally natural that he left to his wife the control of his estate, one not of great value, and intrusted her with the education of the grandson whom they had raised; and yet he "directs" that he have "a right good education."

In the succeeding paragraph the testator directs that, after the death of his wife, certain legacies be paid, one of $500, to the respondent, and $200 to his granddaughter, Mattie Mims, and that the remainder of his estate to be divided into four equal parts, making disposition thereof to his daughter, Susan Williamson, and to his grandchildren, respondent receiving a one-fourth. In the concluding paragraph the testator directs that upon the death of his wife an administrator be appointed according to law, that he make bond and carry out the aforesaid provisions of his will. There is no word of gift or devise to the wife. In order to hold that she takes a beneficial interest, it must result from necessary implication. It must not rest on conjecture, but must be so plain as to be irresistible to the judicial mind. "If the words of the will, as written, construed in their ordinary sense, will make a valid will, then there can be no room for implication."

Applying this well-recognized rule to the instant case, we are of opinion that the wife did not take a beneficial interest. The words of the will, as written, construed in their ordinary sense, make a valid will, and therefore there is no room for implication. It is clear that the wife is charged with a trust to see to the education of the grandson whom they had raised. The proper care, education, and future welfare of this boy was doubtless uppermost in the mind of the testator. His estate was not large, but was, in fact, very modest. If it were to be of effective service, it was necessary that it be kept more or less intact. Long years of wedded life had doubtless inspired perfect confidence in his wife, evidenced by his giving her full control of his estate, with authority to "sell or buy property," and power to make title. He gives her power not only to sell, but to buy property, and if any meaning is to be given the word buy, in this connection, it must be that he meant buy for his estate; otherwise it would be well-nigh without any sensible meaning.

In reference to the education of his grandson, he authorizes his wife to pay for same out of "my [his] estate," and throughout the will reference is made to "my estate." He directs the payment of certain legacies, and makes disposition of his estate after the death of his wife, and directs that an administrator carry out the provisions of his will. He recognizes the trust relation of his wife wherein he directs that she be required to give no bond in taking possession of his estate. He postpones the division of his estate until her death, and, as doubtless intended for her full protection in the management of his estate, exempts her from making any settlement to any court.—*Burch v. Gaston,* 182 Ala. 467, 62 South. 508. Giving to the language used its ordinary meaning, and looking at the will as a whole,

it is entirely consistent therewith to hold that the wife was given full control of the estate with power to sell, for the purpose of managing the same, carrying out the wishes of the testator as to the education of respondent, and holding the estate together for distribution at her death, and that her interest was what might be termed "executorial," or that of a trustee relieved of any bond or of the duty of making any settlement.—28 Am. & Eng. Ency. Law (2d Ed.) 902. We so conclude, and that she took no beneficial interest.

(5) The bill shows that the two deeds, cancellation of which is here sought, were executed without consideration to respondent, and were, in effect, a gift of the bulk of the estate to the respondent. The power to sell was, in our opinion, accompanied with a trust, and for certain purposes. There is nothing in the will which can be construed as giving to the wife a right to give away the estate. It is, we think, too plain for argument that the power to sell did not authorize such a disposition of the estate as is alleged in the bill was made by the execution of these two deeds.

(6) The enjoyment of the estate devised to complainants is postponed until the death of the widow, and it is quite clear that they were within their rights in filing the bill.—*Nabors v. Woolsey*, 174 Ala. 289, 56 South. 533.

The cases cited by counsel of *Wells v. Amer. Mortgage Co.*, 109 Ala. 430, 20 South. 136, *Cain v. Cain*, 127 Ala. 440, 29 South. 846, *Young v. Sheldon*, 139 Ala. 444, 36 South. 27, 101 Am. St. Rep. 44, and *Hood v. Bramlett*, 105 Ala. 660, 17 South. 105, have no application to the instant case, as the wills there construed were entirely different, and in each an interest in the estate was expressly given. Here, we conclude, there was no beneficial interest given the wife.

[Carmichael, et al. v. Pond.]

(7) The sole purpose of the bill is to cancel the two deeds referred to, and this question only has received consideration here. Their cancellation is sought upon the theory that they were executed by the widow in violation of her trust duties; and the widow, the grantor, is not made a party to the bill. An assignment of demurrer takes the point that she is a necessary party. We think this clear, and that it was therefore error to overrule the same, and that this ground of demurrer should have been sustained.

For this sole error the decree must be reversed.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ:, concur.